IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MELANIE MEISTER,              )
                              )
   *Plaintiff*,          )
                              )
v                             )  Case No. 09-2544-EFM
                              )
KANSAS CITY, KANSAS           )
HOUSING AUTHORITY,            )
                              )
   *Defendant*.          )

**MEMORANDUM AND ORDER**

  Plaintiff, *pro se*, has brought the above-captioned action arising from the termination of governmental housing assistance and eviction from a housing unit. This case is before the court upon defendant's motion for summary judgment, plaintiff's motion for a jury trial and plaintiff's motion to correct exhibit.[1]

**I. UNCONTROVERTED FACTS**

  From about November 1, 2008 and into 2009, plaintiff resided at 2110 N. 67th St. in Kansas City, Kansas. Prior to living at that address, in 2008 plaintiff lived at 2334 Central Avenue in Kansas City Kansas. Plaintiff occupied both housing units with the assistance of a voucher under the Section 8 housing program. Section 8 of the United States Housing Act of 1937,[2] is a housing subsidy program funded by the United States Department of Housing and Urban Development ("HUD").

---

  [1]Defendant Kansas City, Kansas Housing Authority is the sole defendant in this matter now. During the pretrial conference, plaintiff voluntarily dismissed with prejudice her claims against four individuals sued in their official capacities as employees of the Housing Authority. Doc. No. 62 at p. 1 n.1. The Clerk's Office should terminate those persons as defendants in this case.

  [2]42 U.S.C. § 1437f.

Plaintiff received a letter dated August 25, 2008 from plaintiff's landlord at 2334 Central Avenue. The letter was a 30-day notice stating that the lease was expiring and would not be renewed. The letter referred to broken windows "which your boy friend broke which we have police report."[3] The letter appears to have been referred to an employee of defendant.

Plaintiff signed the voucher with defendant on October 2, 2008 for the address at 2110 N. 67th St. and agreed to be bound by its terms. The voucher provided that the family (including each family member) must not damage the unit or premises (other than damage from ordinary wear and tear) or permit any guest to damage the unit or premises. Plaintiff knew she was bound by those terms.

Corey Cisneros, the father of one of plaintiff's sons, was listed on plaintiff's voucher in 2008 and for some period in 2009. He was also on plaintiff's lease for a period of time in 2009. On June 28, 2009, plaintiff filed a police report listing herself as a victim of domestic criminal damage at 2110 N. 67th St., Kansas City, Kansas. Plaintiff alleges in this case that Cisneros caused the damage.

On or about July 10, 2009, plaintiff received a letter from her landlord at 2110 N. 67th St. The letter stated that plaintiff was responsible for damages to the residence which had been accumulating and included: two broken windows, ripped blinds, and broken storm windows. Later, plaintiff was notified by a letter from defendant dated July 28, 2009 that her housing "unit" had been damaged beyond normal wear and tear in violation of the voucher agreement and that the voucher would terminate by the end of August 31, 2009.[4] Neither document mentioned the residence at 2334 Central Avenue or any other previous residence. Plaintiff was offered an informal fair hearing

---

[3]Doc. No. 67, Exhibit 1 at p. 7.

[4]Doc. No. 67, Exhibit 2 at p. 33.

which she could request in writing. Plaintiff did request an informal fair hearing which was scheduled for August 12, 2009. The termination of the housing voucher was upheld following the informal fair hearing.

The opinion of Marc Marcano, the hearing officer at the informal fair hearing, states in part:

[Ms. Meister] is currently facing eviction from Mr. David Epperson due to damages to his property in excess of $250.
**FACTS**
Section 8 staff reported that Davi[d] Epperson, Ms. Meister's landlord intends to evict her due to damages to his property estimated at $263.00. Damages include two broken windows, blinds and storm windows. <u>Ms. Meister testified that she has been victimized by the fathers of her children, who routinely vandalize her home.</u> [emphasis added]

Dana Clark provided photographs taken of Ms. Meister's previous unit at 2334 Central Ave. Soon after she vacated and transferred to her current unit. The photographs clearly show the unit in deplorable condition with holes in the wall; trash and debris throughout; filth in the bathroom; dirty dishes in the sink and grime in the refrigerator and stove. Ms. Meister viewed the photographs and simply stated that she did not have the time to clean the unit properly when she vacated.
**OPINION**
**I find that Melanie Meister has deliberately failed to maintain her current and past subsidized units in acceptable housekeeping condition and proper hygiene, in violation of Section 8 regulations and her Dwelling Lease. I am therefore upholding the termination of her Section 8 assistance and find that [she] is too irresponsible to continue as a participant of the Section 8 program.**

<u>**Melanie Meister hereby forfeits her Section 8 Voucher.**</u>[5]

## II. SUMMARY JUDGMENT STANDARDS

Summary judgment is proper if it is demonstrated that the movant is entitled to judgment as a matter of law on the basis of facts to which there is no genuine dispute. The court must determine "whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in

---

[5]Doc. 67, Exhibit 1 at p. 15.

favor of either party."[6] "Only disputes over facts that might affect the outcome of the suit under the governing law will . . . preclude summary judgment."[7] There are no genuine issues for trial if the record taken as a whole would not persuade a rational trier of fact to find for the nonmoving party.[8] The court may not act as the jury and determine witness credibility when it examines the record upon a summary judgment motion.[9] The evidence and all reasonable inferences therefrom are construed in the light most favorable to the nonmoving party.[10] "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial."[11]

Because plaintiff appears *pro se*, her pleadings are to be construed liberally and not to the standard applied to an attorney's pleadings.[12] If plaintiff's motion can be reasonably read to state a valid claim on which she could prevail, the court should do so despite a failure to cite proper legal authority or follow normal pleading requirements.[13] However, it is not "the proper function of the district court to assume the role of advocate for the *pro se* litigant."[14] For that reason, the court shall not supply additional factual allegations to round out a plaintiff's claims or construct a legal theory

---

[6] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[7] *Id.* at 248.

[8] *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[9] *Windon Third Oil and Gas v. Federal Deposit Ins.*, 805 F.2d 342, 346 (10th Cir. 1986) *cert. denied*, 480 U.S. 947 (1987).

[10] *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir.) *cert. denied*, 537 U.S. 816 (2002).

[11] *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir.1988).

[12] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[13] *Id.*

[14] *Id.*

on plaintiff's behalf.[15]

## III. PLAINTIFF'S CLAIMS

Plaintiff's complaint alleges a violation of plaintiff's civil rights or equal rights, and a breach of contract.[16] The pretrial order,[17] which under FED.R.CIV.P. 16(d) supersedes all pleadings and controls the course of the case, describes this matter as a "civil rights" case wherein plaintiff asserts claims on the basis of the Violence Against Women Act ("VAWA") and for sex discrimination under *Bouley v. Young-Sabourin*.[18] VAWA and the *Bouley* case are also mentioned as plaintiff's "theories of recovery" in the pretrial order.[19] In *Bouley*, the plaintiff alleged that she was evicted from her apartment in violation of the Fair Housing Act of 1968.[20] More specifically, the plaintiff in *Bouley* claimed that the statute's provisions against sex discrimination were violated when she was evicted shortly after her husband criminally attacked her in the apartment.[21]

Plaintiff's factual contentions in this case are set forth in the pretrial order as follows:

> Defendants broke HUD's contract regarding plaintiff's family status by terminating her voucher which discriminated against her family on August 12, 2009.
> Corey Cisneros criminally attacked plaintiff and, as part of the physical violence perpetrated by Corey Cisneros against plaintiff, broke windows, damaged blinds, and damaged storm windows at 2110 N. 67th Street, Kansas City Kansas on June 28, 2009. Plaintiff filed [an] offense report no. 2009-06-3579 and Corey Cisneros was arrested as a result of the above-described domestic violence.
> Defendants made the following false statements: it was stated in the informal fair

---

[15] *See Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

[16] Doc. No. 1.

[17] Doc. No. 62 at p. 2.

[18] 394 F. Supp. 2d 675, 678 (D. Vt. 2005).

[19] Doc. No. 62 at p. 6..

[20] 42 U.S.C. §§ 3601 *et seq*.

[21] The plaintiff's Fair Housing Act claim in *Bouley* also alleged religious discrimination.

hearing opinion that Davis Epperson, plaintiff's landlord, intended to evict her due to damages to his property; making a statement that photographs of plaintiff's previous unit at 2334 Central Avenue showed the unit in deplorable condition; stating that plaintiff continued to cause extensive damages on the past three subsidized units she has occupied; and the finding in the informal fair hearing opinion of defendants that plaintiff deliberately failed to maintain her current and past subsidized units in acceptable housekeeping condition and proper hygiene in violation of Section 8 regulations and her Dwelling Lease.

   Defendants violated housing authority rules by not excusing plaintiff from the informal fair hearing held August 12, 2009 at plaintiff's request because she had just had oral surgery. Defendants harassed and discriminated against plaintiff by not permitting her to reschedule the informal fair hearing.[22]

The court construes plaintiff's legal and factual contentions in the pretrial order as presenting two claims: 1) a claim under the VAWA; and 2) a claim under the Fair Housing Act. The court acknowledges plaintiff's reference to a breach of "HUD's contract" in the factual contentions. However, because breach of contract is not mentioned in the pretrial order in the description of the case or as a theory of recovery, the court finds that plaintiff is not bringing a breach of contract claim. In addition, the factual contentions do not describe a breach of defendant's contract with plaintiff as opposed to a breach of "HUD's contract."

The court notes that defendant's summary judgment motion asserts that plaintiff's sole basis for this lawsuit is the VAWA.[23] Defendant cites plaintiff's deposition and § 3 of the pretrial order. Defendant's citation ignores the above-quoted parts of the pretrial order. Given the deference afforded to plaintiff's *pro se* status and the logical need to read the pretrial order as a whole, the court believes it is proper to hold that the pretrial order sets out two claims for relief.[24]

---

[22]Doc. No. 62 at pp. 4-5.

[23]Doc. No. 67 at p. 10.

[24]Section 3(d) of the pretrial order sets forth under the heading of "Governing Law" that "[s]ubject to the court's determination of the law that applies to the case, plaintiff contends that 42 U.S.C. § 1437d(u)(3)(D) and 42 U.S.C. § 1437f(f)(11) apply to this case." Doc. No. 67 at p. 2. The conditional language of this section of the pretrial order provides further grounds not to limit plaintiff's claims to the VAWA sections recited therein.

-6-

**IV. DEFENDANT'S ARGUMENTS FOR SUMMARY JUDGMENT**

Defendant makes two arguments for summary judgment. First, defendant contends that plaintiff may not bring a private cause of action to recover for a violation of VAWA. Second, defendant contends that plaintiff cannot establish that her housing voucher was terminated for a legally improper reason.

    A. <u>Private action to enforce VAWA</u>

In 2006, Congress reauthorized VAWA and established new housing provisions within the Housing Act of 1937 that cover any victim of domestic violence who resides in Section 8 housing.[25] Under these provisons, "[a]n incident or incidents of actual or threatened domestic violence, dating violence, or stalking will not be construed as a serious or repeated violation of the lease by the victim or threatened victim of that violence and shall not be good cause for terminating the assistance, tenancy, or occupancy rights of the victim of such violence."[26] Similarly,

> [c]riminal activity directly relating to domestic violence, dating violence, or stalking, engaged in by a member of a tenant's household or any guest or other person under the tenant's control shall not be cause for termination of assistance, tenancy, or occupancy rights if the tenant or an immediate member of the tenant's family is the victim or threatened victim of that domestic violence, dating violence or stalking.[27]

---

[25] Pub.L.No. 109-162, 119 Stat. 2960.

[26] 42 U.S.C. § 1437f(c)(9)(B); see also 42 U.S.C. § 1437d(l)(6)(A).

[27] 42 U.S.C. § 1437f(c)(9)(C)(I).

Defendant argues that summary judgment is justified against plaintiff's VAWA claim because there is no private right of action under the VAWA. Defendant cites *Banks v. Dallas Housing Authority*[28] for this position. In *Banks*, a group of plaintiffs brought a class action asserting that the defendant housing authority violated Section 8 of the Housing Act of 1937,[29] which in 1990 set forth that:

> [The Secretary of HUD is authorized to] make assistance payments under this section directly or through public housing agencies pursuant to contract with owners or prospective owners who agree to upgrade housing so as to make and keep such housing decent, safe, and sanitary through upgrading which involves less than substantial rehabilitation . . . .

The plaintiffs in *Banks* argued that this section set out an enforceable federal right to decent housing. The Fifth Circuit rejected this argument and held that there was no implied right of action for violation of this section which could be enforced by the plaintiffs under 42 U.S.C. § 1983.

Some statutory rights may be enforced via § 1983. "[T]he primary question in determining whether a statute will support a claim under § 1983 is whether 'Congress intended to confer individual rights upon a class of beneficiaries.'"[30] A court must examine three factors in making this determination:

> First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so vague and amorphous that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms.[31]

---

[28]271 F. 3d 605, 611 (5th Cir. 2001).

[29]42 U.S.C. § 1437f(e).

[30]*Hobbs ex rel. Hobbs v. Zenderman*, 579 F.3d 1171, 1179 (10th Cir. 2009)(quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 279 (2002)).

[31]*Id.* (quoting *Blessing v. Freestone*, 520 U.S. 329, 340-41 (1997)(quotation omitted)).

-8-

"A statute embodies congressional intent to benefit the plaintiff only if it is 'phrased in terms of the persons benefited.'"[32] If Congress has provided an administrative review mechanism for enforcing the provisions at issue, this counsels against finding a right enforceable under § 1983.[33]

The VAWA language previously recited in this opinion comes much closer to satisfying the above-listed three factors than the statutory language considered by the Fifth Circuit in *Banks*.[34] The court is not aware of any cases which have applied those three factors to the statutory language relevant to plaintiff's claims.

The briefing on this issue is quite limited as is the factual record before the court. Under these circumstances, pending further development of the legal and factual record, the court believes it is appropriate to decline to rule whether plaintiff has a right of action, enforceable under § 1983, pursuant to the provisions of VAWA as incorporated in the Housing Act of 1937. As discussed later in this opinion, there is another claim in this case which shall survive defendant's summary judgment motion. Therefore, deciding this matter upon summary judgment would not result in

---

[32]*Id.* (quoting *Gonzaga Univ.*, 536 U.S. at 284).

[33]*Gonzaga Univ.*, 536 U.S. at 289-90.

[34]Other litigants have had mixed success in arguing for a right of action enforceable under § 1983 in Section 8 litigation post-dating the *Banks* decision. The Fifth Circuit has distinguished the *Banks* decision and found that voucher recipients could challenge the calculation of their utility allowance under the provisions of 42 U.S.C. § 1437f(o)(2) and § 1983. *Johnson v. Housing Authority of Jefferson Parish*, 442 F.3d 356 (5th Cir.) *cert. denied*, 549 U.S. 821 (2006). In *Stevenson v. Willis*, 579 F.Supp.2d 913 (N.D.Ohio 2008), the court held that a former voucher recipient had a private right of action to enforce provisions setting forth administrative grievance procedures. On the other hand, in *Anderson v. Jackson*, 556 F.3d 351 (5th Cir. 2009) the court held that Section 8 housing tenants did not have a private right of action to prevent demolition of public housing and in *Johnson v. City of Detroit*, 446 F.3d 614 (6th Cir. 2006), the court held that Section 8 tenants did not have a private enforceable right under § 1983 to ensure compliance with lead-based paint standards implemented for Section 8 housing pursuant to the Lead-Based Pain Poisoning Prevention Act). The relevance of each case is limited by the differences in the statutory language in question from the sections at issue in this case.

saving time or expense for the parties or the court.[35]

  B. <u>Failure of proof</u>

  Defendant makes a general argument that plaintiff cannot prove a cause of action against defendant. Since defendant does not describe what plaintiff's claims are or what the elements of the claims are, it is difficult to evaluate defendant's argument. Defendant seems to support its position with three basic contentions: 1) plaintiff did not claim that she was a domestic violence victim to defendant's representatives; 2) plaintiff has shifted her theory of the case or is confused as to her theory of the case; and 3) domestic violence did not cause some of the damage to plaintiff's housing units. The court does not believe these contentions justify summary judgment.

  1. <u>Defendant's knowledge of domestic violence</u>

  Defendant argues that the record will not support an inference that plaintiff was evicted because she was a victim of domestic violence. In support of this claim, defendant makes reference to the affidavits of five persons who worked for defendant. Three of these people were present at plaintiff's informal fair hearing on August 12, 2009. They have sworn in affidavits that plaintiff did not mention that she was a victim of domestic violence or domestic abuse at the hearing.[36] Three employees have sworn that they were case managers familiar with plaintiff's situation in 2008 or 2009 and that plaintiff never said she was a victim of domestic violence or domestic abuse.[37] Defendant also asserts that plaintiff has admitted that she never mentioned that she was the victim of domestic violence or abuse <u>before</u> the August 12, 2009 hearing.

---

[35]The exercise of judicial discretion to refuse to grant summary judgment in situations such as this is discussed in 10A Wright, Miller & Kane, FEDERAL PRACTICE AND PROCEDURE § 2728 at pp. 529-31 (1998).

[36]Doc. No. 67, Exhibits 3, 4, 6.

[37]Doc. No. 67, Exhibits 5, 6, 7.

We believe there is a material issue of fact as to whether plaintiff told defendant's representatives that she was a domestic violence victim. The decision of the informal fair hearing, quoted earlier in this opinion, states that plaintiff "testified that she has been victimized by the fathers of her children, who routinely vandalized her home." In addition, to support defendant's claim that plaintiff did not mention domestic violence to defendant's representatives <u>before</u> the informal fair hearing, defense counsel cites the following partial answer from plaintiff's deposition:

> Q. Before the hearing in August 2009, had you ever informed any representative of the Kansas City Housing Authority that you were a victim of domestic violence?
>
> A. No, I didn't have to. I mean it wasn't their business at the time. I mean he was my son's father. I mean if I actually - - they never had their - - it's not their right to ask. But when I did ask and I told them that I was - - because this wasn't my fault in 2009, and it shouldn't have been my fault in 2008. But it was my first alleged violation of damages that I was[38]

Although the plaintiff's answer is difficult to follow it appears to say that plaintiff did tell defendant's representatives at some point (perhaps at the informal fair hearing) that the damage to her housing unit was not her fault and implies that the damage was caused by her son's father. Of course, the record contains the police report of domestic criminal damage at 2110 N. 67th St. on June 28, 2009. In addition, there is the 30-day notice regarding 2334 Central Avenue which suggests that defendant's representatives were aware that defendant's boyfriend caused criminal damage at that housing unit in 2008. These items in the record are sufficient to create a material fact issue as to whether defendant's representatives were aware that damage done to plaintiff's housing units was caused by domestic violence.

---

[38]Doc. No. 67, Exhibit 2 at p. 30 (this is page 106 of plaintiff's deposition at lines 13-25, page 107 was not provided as part of the exhibit to defendant's motion).

The court believes this evidence would be relevant to plaintiff's VAWA claim and to a claim under the Fair Housing Act.[39] The Fair Housing Act prohibits gender-based discrimination in rental housing.[40] Courts have generally applied the analytical framework used in employment discrimination cases to claims of sex discrimination in violation of the Fair Housing Act.[41] Under the *Bouley* case, evidence that defendant knew that domestic violence caused damage to plaintiff's housing unit would help support a claim that she was evicted under circumstances giving rise to an inference of sex discrimination. Defendant's motion makes no argument against the legal holding in *Bouley*.

### 2. Plaintiff's shifting theory of the case

Defendant argues that plaintiff cannot prove her case because she has filed complaints listing this matter as race discrimination, familial discrimination, and sex discrimination. Plaintiff has also stated that she did not know why her housing assistance was terminated. The court rejects this as good cause for summary judgment for the following reasons. As the court has already stated, the pretrial order controls the course of this case and therein plaintiff clearly states she is making a sex discrimination claim under the *Bouley* case. So, as a legal matter, this case contains that claim as well as the VAWA claim. As a factual matter, defendant may argue that past statements or complaints by plaintiff show that she does not believe she has been the victim of sex discrimination for the purposes of the Fair Housing Act. However, that is an argument which must be considered in the context of the rest of the evidence in this case. The court believes the evidence is sufficient

---

[39] 42 U.S.C. § 3604(b).

[40] *Honce v. Vigil*, 1 F.3d 1085, 1088 (10th Cir. 1993).

[41] *Id.* at 1089; *Dicenso v. Cisneros*, 96 F.3d 1004, 1008 (7th Cir. 1996); see also, *Huntington Branch, NAACP v. Town of Huntington*, 844 F.2d 926, 934-35 (2d Cir. 1988).

to withstand defendant's motion for summary judgment.

   3. <u>Evidence that domestic violence did not cause some of the damage in plaintiff's housing units</u>

There is evidence that domestic violence may not have caused all of the damage in plaintiff's housing units. Defendant may argue that plaintiff's housing assistance would have been terminated regardless of the fact that some of the damage may have been caused by domestic violence. This is an argument which the court may consider at trial. However, the support for the argument is too inconclusive at this stage to warrant summary judgment.

## V. PLAINTIFF'S MOTION FOR JURY TRIAL

Plaintiff filed her complaint in this case on October 21, 2009. The complaint uses a form provided by this court. Plaintiff did not circle on the form whether or not she wanted a jury trial. Discovery was to be completed in this case by June 18, 2010 and the pretrial order reflects that discovery is complete.[42] The final pretrial order was filed on September 8, 2010. That order set the trial in this case for April 5, 2011. That trial setting remains. At the final pretrial conference, held on August 18, 2010, plaintiff asked for a jury trial. Plaintiff was granted time until October 8, 2010 to file "a motion for relief from her waiver of right to jury trial."[43] On October 5, 2010, plaintiff filed a one-sentence motion requesting a jury trial.[44] Defendant opposes plaintiff's motion on the grounds that it is inexcusably late.

---

[42] Doc. No. 62 at p. 9.

[43] Id. at p. 13 n.4.

[44] Doc. No. 64.

FED.R.CIV.P. 39(b) permits the district court, in its discretion, to order a jury trial notwithstanding a party's failure to make a timely jury demand. The Tenth Circuit has consistently recognized that absent "strong and compelling reasons to the contrary," a request for a jury trial should be granted.[45] The court acknowledges that the Tenth Circuit has also held that it is not an abuse of discretion to deny relief under Rule 39(b) when the failure to make a timely jury demand results from nothing more than mere inadvertence.[46] This holding, however, does not mean that a jury request must be denied in such cases.[47] The court has broad discretion.[48]

In this instance, defendant has made no claim that plaintiff's belated jury request will be prejudicial to it. Lack of prejudice is a factor the court may consider in granting a motion for jury trial.[49] Lack of legal assistance is another factor the court may consider in favor of a Rule 39(b) motion for a jury trial.[50] After a careful consideration of the circumstances of this case and the positions of the parties, the court shall grant plaintiff's request for a jury trial.

## VI. PLAINTIFF'S MOTION TO CORRECT EXHIBIT

Plaintiff has filed a motion to correct exhibit.[51] No timely opposition has been filed to the motion. The motion asks to correct the final pretrial order by changing a reference to a police report

---

[45] *Green Construction Co. v. Kansas Power & Light* Co., 1 F.3d 1005, 1011 (10th Cir. 1993); *Nissan Motor Corp. v. Burciaga*, 982 F.2d 408, 409 (10th Cir. 1992); *AMF Tuboscope, Inc. v. Cunningham*, 352 F.2d 150, 155 (10th Cir. 1965).

[46] *Dill v. City of Edmond*, 155 F.3d 1193, 1208 (10th Cir. 1998); *Burciaga*, 982 F.2d at 409.

[47] *Goff v. Owen Healthcare, Inc.*, 166 F.R.D. 492, 495 (D. Kan. 1996).

[48] *Paramount Pictures Corp. v. Thompson Theatres*, 621 F.2d 1088, 1090 (10th Cir. 1980).

[49] *Megadyne Medical Products v. Aaron Medical Industries*, 170 F.R.D. 28, 29 (D.Utah 1996).

[50] *Members v. Paige*, 140 F.3d 699, 704 (7th Cir. 1998).

[51] Doc. No. 63.

number from 2008-10-3262 to 2007-11-2827. The motion appears to be referring to § 4(b)(5) of the final pretrial order.[52] Plaintiff's motion shall be granted.

## VII. CONCLUSION

For the above-stated reasons, defendant's motion for summary judgment (Doc. No. 66) shall be DENIED, plaintiff's motion for a jury trial (Doc. No. 64) shall be GRANTED and plaintiff's motion to correct exhibit (Doc. No. 63) shall be GRANTED.

**IT IS SO ORDERED**.

Dated this 25th day of February, 2011.

                                                                    ERIC F. MELGREN
                                                                    UNITED STATES DISTRICT JUDGE

---

[52] Doc. No. 62 at p. 4.